UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Diamond State Insurance Company, ) | |
| ) | C/A 0:05-cv-01917-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER FOR DEFAULT JUDGMENT** |
| Richard Anderson, Tamara Anderson, ) | |
| Summerfield Farm, Inc., and ) | |
| Charles Morrill and Maurita Morrill, ) | |
| individually and d/b/a ) | |
| The Ark Farm, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. INTRODUCTION

On July 5, 2005, Plaintiff Diamond State Insurance Company filed a Complaint seeking declaratory judgment delineating the duties and responsibilities of Plaintiff under a disputed insurance contract. Defendants Charles Morrill and Maurita Morrill ("the Morrills") were served by certified mail, restricted delivery on July 8, 2005. Defendants Summerfield Farm, Inc. ("Summerfield"), Richard Anderson, and Tamara Anderson (the "Andersons") were also served by certified mail, restricted delivery on July 11, 2005. An affidavit of service was filed in this matter on September 8, 2005.

On July 27, 2005, Defendant Tamara Anderson contacted Plaintiff's attorney by electronic mail to request a an extension to file an answer in this action. Motion for Entry of Default, Found at CM/ECF Entry 6-2, 1. Plaintiff's attorney granted this request and gave Defendant Anderson until August 22, 2005 to file an answer. Id. Aside from the noted exchange, Defendants failed to

file an answer or otherwise respond in this action. On September 27, 2005, Plaintiff made a motion for entry of default. Pursuant to Fed. R. Civ. P. 55(a), an entry of default was entered by the clerk on September 28, 2005. Plaintiff's motion for Default Judgment is now before the court.

## II. FACTS

At issue in this case is Plaintiff's duty to indemnify and defend the Morrills in an underlying lawsuit ("underlying case") filed in South Carolina state court.[1] In the underlying case, the Andersons and Summerfield allege that the Morrills sold them an Arabian horse that carried a fatal genetic defect. This sale occurred in 1999 and allegedly came after the Morrills explicitly assured the Andersons and Summerfield that the horse was free of the specific genetic defect he was later found to carry. Complaint, 3. The Andersons and Summerfield allege in the underlying case that the Morrills committed fraud, fraud in the inducement, and breach of contract accompanied by a fraudulent act. Id. They seek damages for the amounts they expended to promote and breed the horse, as well as lost profits resulting from the horse's status as a carrier of the genetic defect. Id.

The instant suit alleges that the Morrills were issued three "Equine Commercial General Liability Policies" ("the policies") by Plaintiff between December 10, 2001 and December 10, 2004. Complaint, 3. Plaintiff avers that no policy was issued prior to December 10, 2001. Id. Plaintiff seeks declaratory judgment that the allegations in the underlying case do not trigger coverage under the policies. Id. at 4-8. Specifically, Plaintiff argues that the policies require Plaintiff to indemnify the Morrills only for "property damage or bodily injury" covered under the policies. Id. at 4.

---

[1] The lawsuit was filed in the Court of Common Pleas for York County, South Carolina. See Richard Anderson et al. v. Maurita Morrill et al., C/A # 05-CP-46-385.

Plaintiff argues that the underlying case does not allege such damage and that Plaintiff is entitled to a declaration from the court stating same. Id. In the alternative, Plaintiff avers that any "property damage" or "bodily injury" alleged in the underlying case occurred prior to the inception of the Morrills' insurance coverage. Id. at 5. Further, Plaintiff alleges that the underlying case seeks recovery for economic loss that is not covered by the insurance policies or is expressly excluded by a provision of the insurance policy. Id. at 6-7. Finally, Plaintiff argues that the underlying case alleges only the commission of intentional torts and that the insurance policies do not provide coverage for torts stemming from the Morrills' intentional tortious conduct. Id. at 7-8. Plaintiff attaches to its complaint a copy of the insurance policies in question and a copy of the complaint in the underlying case.

### III. LAW/ANALYSIS

Plaintiff has moved for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). Fed. R. Civ. P. 55(b)(2) provides that, prior to entering default judgment, the court "may conduct such hearings or order such references as it deems proper" if the court finds it necessary to determine the amount of damages or to establish the truth of any averment in the complaint. Fed. R. Civ. P. 55(b)(2). In the instant matter the court declines to hold a hearing as the facts are adequately presented in the within motion and in Plaintiff's complaint.

Plaintiff's complaint seeks declaratory judgment outlining Plaintiff's duty to defend and indemnify the defendant's in the underlying case. Under South Carolina law, an insurer's duty to defend is based upon the allegations in the underlying complaint. South Carolina Med. Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry, 354 S.E.2d 378, 380 (S.C. 1987). If the facts alleged

in a complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend.  Id.  Therefore, to determine coverage, a court in a declaratory judgment action should compare the complaint in the underlying action with the language of the policy to see whether the complaint alleges any facts that could possibly bring the action within the coverage of the policy. Jefferson-Pilot Fire & Cas. Co. v. Sunbelt Beer Distributors, Inc., 839 F. Supp. 376, 378 (D.S.C. 1993) (citing Shelby Mut. Ins. Co. v. Askins, 413 S.E.2d 855, 859 (S.C. Ct. App. 1992)).

Insurance policies are subject to the general rules of contract construction.  Century Indem. Co. v. Golden Hills Builders, Inc., 561 S.E.2d 355, 358 (S.C. 2002) (citing B.L.G. Enterprises, Inc. v. First Financial Ins. Co., 514 S.E.2d 327 (S.C. 1999)).  The court must give policy language its plain, ordinary, and popular meaning.  Id.   When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used.  Id.   However,  South Carolina law commands that insurance coverage be construed liberally against the insurer, and any ambiguities in the policy be interpreted in favor of the insured.  Jefferson-Pilot Fire & Cas. Co., 839 F. Supp. at 378.

In the instant case, the insurance policies at issue apply to "occurrences" resulting in "bodily injury" or "property damage."  Commercial General Liability Coverage Form, 1 (found at ECF/CM entry 1-2, 21).  The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. at 13 (ECF/CM entry 1-2,33). "The South Carolina Supreme Court has interpreted the term 'accident' to mean 'an effect which the actor did not intend to produce and cannot  be charged with the design of producing.'" Manufacturers & Merchants Mut. Ins. Co. v. Harvey, 498 S.E.2d 222, 225 (S.C. Ct. App. 1998) (citing Goethe v. New York Life Ins. Co., 190 S.E. 451 (S.C. 1937). Stated plainly, "an intended

4

injury cannot be accidental." Id.  Thus, the policy unambiguously limits coverage to unintended incidents of "bodily injury" or "property damage."

In the underlying case, the Andersons and Summerfield allege that the Morrills sold the horse after "knowingly" making false representations about the horse's genetic health.  State Court Complaint, 5 (found at ECF/CM entry 1-3, 5).  They argue that the Morrills made "fraudulent representations" about the horse's health and "knew prior to entering into the contract with the Andersons [and Summerfield] that [the horse] was [a carrier of the genetic defect]." Id. at 6-7 (ECF/CM entry 1-3, 6-7).  Thus, the underlying complaint plainly dictates that the "bodily injury" or "property damage" alleged by the Andersons and Summerfield did not occur as a result of an accidental "occurrence" as defined in the insurance policies and established state law.[2]

It is also clear from the record that the policies in question were inactive at the time the alleged "property damage" occurred.  Complaint, 5.  The insurance policies at issue cover "bodily injury" and "property damage" occurring "during the policy period."  Commercial General Liability Coverage Form, 1 (found at ECF/CM entry 1-2, 21).  The policies limit the "policy period" to one year increments measured prospectively from the original date of purchase in December of 2001, and are not retroactive.[3]  Commercial General Liability Coverage Declarations (found at ECF/CM entry

---

[2] Though not argued by Plaintiff, the court notes that even if the Morrills were sued in their professional capacities for negligent acts or omissions resulting from the providing of "professional services" in connection with the sale of the horse, the policies would not be implicated. The policies expressly exempt such liability stemming from "[a]ny fraudulent, dishonest, or criminal act." Equine Professional Liability Coverage Endorsement, 1 (found at ECF/CM entry 1-2, 10).  Because the underlying complaint alleges fraudulent and deceitful conduct, this provision is triggered and the underlying action would fall outside the coverage of the policies.

[3] At issue are three policies that extend coverage from December 10, 2001 to December 10, 2002, Commercial General Liability Coverage Declarations (found at ECF/CM entry 1-2, 1), December

1-2, 1, 12, 14)   The sale of the horse occurred on October 21, 1999.  State Court Complaint, 3 (found at ECF/CM entry 1-3, 3).  The complaint in the underlying case alleges that the Morrills were aware of the horse's genetic condition "from at least [] May of 1999."  Id.  The insurance policies in the instant matter were not issued until over two years after the sale of the horse and after the occurrence of any "property damage" or "bodily injury" outlined in the underlying complaint.  Commercial General Liability Coverage Form, 1 (found at ECF/CM entry 1-2, 21).  Accordingly, to the extent the horse's genetic condition could be construed as "property damage" or "bodily injury," the allegations of the underlying case would not be covered under the policies.

Finally, the plain language of the policy exempts it from indemnifying or defending the Morills for the theories of recovery alleged in the underlying case, namely fraud, fraud in the inducement, and breach of contract accompanied by a fraudulent act.  Complaint, 7.  The policies specifically exempt "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."  Commercial General Liability Coverage Form, 1 (found at ECF/CM entry 1-2, 21).  Established law in South Carolina recognizes that this exact language exempts an insurer from providing coverage for intentional torts allegedly committed by the insured.  Jefferson-Pilot Fire & Cas. Co., 839 F. Supp. at 380 (citing cases).  Thus, to the extent any "property damage" or "bodily injury" occurred and is attributable to the Morrills, the underlying complaint contemplates that it was "expected or intended" as the Morrills allegedly knew the horse's defect before the sale of the horse.  State Court Complaint, 4-7 (found at ECF/CM entry 1-3, 4-7).  Because of the express exemption in the policy for intentional acts by the insured, no facts alleged in the underlying complaint could

---

10, 2002 to December 10, 2003, id. at 12, and December 10, 2003 to December 10, 2004.  Id. at 14.

trigger the insurance coverage at issue.

## IV. CONCLUSION

Having reviewed the record in this case, the court finds that default judgment in favor of Plaintiff is appropriate. Plaintiff has proven, for the reasons articulated above, that declaratory judgment in its favor is warranted by the uncontested facts presented to the court. Further, because Defendants have still failed to appear in any way in this matter and the requested relief does not require the court to calculate damages, the court finds it unnecessary to hold a damages hearing in this matter. Therefore, **IT IS ORDERED** that a Judgment by Default be entered against Defendants.

**IT IS SO ORDERED.**

      /s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

December 16, 2005

Columbia, South Carolina